IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BJ PERAY, | ) | |
|       Plaintiff, | ) | |
| v. | ) | NO. 22 CV 1965 |
| CITY OF CHICAGO, OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE | ) | |
|       Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, BJ PERAY, by and through his attorney, BASILEIOS J. FOUTRIS, and for his Complaint against the Defendants, CITY OF CHICAGO, OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE, states as follows:

### Nature of Action

1. This action is brought pursuant to the Laws of the United States Constitution, through 42 U.S.C. §1983 and 42 U.S.C. §1988, to redress deprivations of the Civil Rights of the Plaintiff by the Defendants.

### Jurisdiction and Venue

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343, and 28 U.S.C. §1367.

3. At all relevant times, the Plaintiff was a resident of the State of Illinois in this Judicial District.

4. At all relevant times, Defendant, CITY OF CHICAGO, was a municipal corporation located in the State of Illinois in this Judicial District. At all relevant times, Defendant, CITY OF CHICAGO, was the employer of Defendants, OFFICER ACOSTA, OFFICER

1

BOURDOSIS, and OFFICER MANDILE. Defendants, OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE, were at all relevant times employed by Defendant CITY OF CHICAGO as duly appointed POLICE OFFICERS acting within the course and scope of their employment and under color of law. Defendants OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE are being sued in their individual capacities with respect to the federal claims.

5. All the events giving rise to the claims asserted herein occurred within this Judicial District.

**Facts**

6. On October 29, 2018 a man named Isaiah Morales was shot.

7. Morales' friend, Esteban Ruiz, was present when Morales was shot.

8. Ruiz witnessed the shooting of Morales.

9. Ruiz saw the person that shot Morales.

10. A few hours after Morales was shot, Ruiz was interviewed by Chicago police officers regarding the shooting.

11. In particular, on October 29, 2018, a few hours after Morales was shot, Defendant MANDILE interviewed Ruiz regarding what he saw and knew about the shooting.

12. On October 29, 2018, just a few hours after the shooting, Ruiz told Defendant MANDILE that a man named "Avery" shot Morales.

13. On that date and time, Ruiz told Defendant MANDILE that Ruiz had a clear view of the face of the person that shot Morales, and that he recognized the shooter as being "Avery".

14. Additionally, on that date and time, Ruiz told Defendant MANDIILE that he knew "Avery" for approximately two years, and that Ruiz had gone to high school with "Avery".

15. On that date and time, Defendant MANDILE arranged for Ruiz to view a photo array to determine whether Ruiz could identify "Avery".

16. On October 29, 2018, a few hours after Morales was shot, Ruiz viewed the photo array that had been arranged by Defendant MANDIILE, and Ruiz identified a man named Avery Murillo as the man that shot Morales.

17. Shortly after Ruiz identified Avery Murillo as the shooter, Defendant MANDILE learned that Ruiz identified Avery Murillo as the person that shot Morales.

18. On November 3, 2018, Defendant MANDILE met with Defendants ACOSTA and BOURDOSIS.

19. During this meeting, Defendants ACOSTA and BOURDOSIS falsely told Defendant MANDILE that the Plaintiff had shot Morales on October 29, 2018.

20. Neither ACOSTA nor BOURDOSIS were present when Morales was shot.

21. Neither ACOSTA nor BOURDOSIS saw Morales being shot.

22. Defendant MANDILE knew, or should have known, that Defendants ACOSTA and BOURDOSIS were falsely accusing the Plaintiff of shooting Morales.

23. Despite his knowledge that Defendants ACOSTA and BOURDOSIS were falsely accusing the Plaintiff of committing this crime, Defendant MANDILE arranged for ACOSTA and BOURDOSIS to view a photo array. Defendants ACOSTA and BOURDOSIS subsequently viewed a photo array, and both of them again falsely identified the Plaintiff as the person that shot Morales.

24. Nobody other than ACOSTA and BOURDOSIS claimed that the Plaintiff shot Morales.

25. On December 17, 2018, the Plaintiff was arrested for shooting Morales.

26. The Plaintiff's arrest was caused by the Defendant Officers actions, including their concocted and false story claiming that the Plaintiff had shot Morales.

27. The Defendant Officers subsequently provided this same concocted/falsified account to prosecutors and in court proceedings, and also authored police reports that contained this concocted/falsified account (that the Plaintiff had shot Morales).

28. The Plaintiff's arrest was made without legal justification, without reasonable suspicion, without a warrant, and without probable cause to believe that the Plaintiff had committed, was committing, or was about to commit a crime.

29. On December 17, 2018, after the Plaintiff had been arrested, Defendant MANDILE re-interviewed Ruiz regarding the shooting.

30. On December 17, 2018, while the Plaintiff was in custody for shooting Morales, Ruiz again told Defendant MANDILE that Avery Murillo was the person that shot Morales.

31. Defendant MANDILE did not release the Plaintiff after hearing what Ruiz had to say on December 17, 2018, or take any steps to make sure that the Plaintiff was neither detained, or prosecuted, for the Morales shooting.

32. The false police reports authored by the Defendant Officers, and the false accounts to the prosecutors and in court proceedings, led to the Plaintiff being charged and prosecuted with shooting Morales.

33. The Defendant Officers knew, or should have known, that there was no reasonable suspicion, probable cause, or legal justification to cause the Plaintiff to be detained, arrested, charged, and indicted for shooting Morales.

34. Due to his arrest, the Plaintiff was confined and/or his movement and/or freedom was restricted in jail facilities for a period of time as a proximate result of the Defendant Officers'

actions. The Plaintiff was confined both before, and after legal process had begun in the criminal matter.

35. The Plaintiff was confined in jail facilities from the date of his initial arrest on December 17, 2018, until he was released from jail on April 26, 2020. On April 26, 2020, the Plaintiff was placed on house arrest. While the Plaintiff was on house arrest, he was not allowed any movement.

36. The Plaintiff's criminal charges were dismissed on May 5, 2021.

37. The Plaintiff's house arrest/home confinement ended when his criminal charges were dismissed on May 5, 2021.

38. The Plaintiff's arrest was done without legal justification and without probable cause or reasonable suspicion. Further, the Plaintiff's pretrial, post legal process detention, and prosecution, was done without legal justification and without probable cause.

39. All of the Defendant Officers' above-referenced acts were intentional and/or willful and wanton and/or objectively unreasonable.

### COUNT I - 42 U.S.C. §1983
### Unlawful Pretrial Detention/*Manuel* – Defendant Officers

40. The Plaintiff re-alleges Paragraphs 1 through 39, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 40.

41. As described in the preceding paragraphs the conduct of the Defendant Officers, acting under color of law, constituted and caused an unlawful pretrial, post legal process, detention of the Plaintiff in violation of the United States Constitution, as recognized in *Manuel v. Joliet*.

42. The misconduct was undertaken by the Defendant Officers under color of law, under the course and scope of their employment, was objectively unreasonable and/or with malice,

5

and/or was undertaken intentionally and/or with willful indifference to the Plaintiff's constitutional rights.

43. The acts of the Defendant Officers were undertaken in violation of the Plaintiff's rights as guaranteed by the United States Constitution.

44. As a direct and proximate result of the acts of the Defendant Officers, the Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

WHEREFORE, the Plaintiff, BJ PERAY, prays for judgment in his favor and against the Defendant Officers, OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE, awarding compensatory damages, punitive damages, attorney fees, and costs against the Defendants, as well as any other relief this Court deems just and appropriate.

## COUNT II - 42 U.S.C. §1983
**Fourth Amendment Violation/*Thompson v. Clark* – Defendant Officers**

45. The Plaintiff re-alleges Paragraphs 1 through 44, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 45.

46. As described in the preceding paragraphs the conduct of the Defendant Officers, acting under color of law, constituted and caused an unlawful pretrial, post legal process, detention and prosecution of the Plaintiff in violation of the United States Constitution, as recognized by the U.S. Supreme Court in *Thompson v. Clark*.

47. The misconduct was undertaken by the Defendant Officers under color of law, under the course and scope of their employment, was objectively unreasonable and/or with malice, and/or was undertaken intentionally and/or with willful indifference to the Plaintiff's constitutional rights.

48. The acts of the Defendant Officers were undertaken in violation of the Plaintiff's rights as guaranteed by the United States Constitution.

49. As a direct and proximate result of the acts of the Defendant Officers, the Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

WHEREFORE, the Plaintiff, BJ PERAY, prays for judgment in his favor and against the Defendant Officers, OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE, awarding compensatory damages, punitive damages, attorney fees, and costs against the Defendants, as well as any other relief this Court deems just and appropriate.

### COUNT III – Illinois State Law
### Malicious Prosecution - CITY OF CHICAGO

50. The Plaintiff re-alleges Paragraphs 1 through 49, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 50.

51. As described above, Defendant, CHICAGO, by and through its agents and/or employees, arrested, commenced and/or continued criminal proceedings against the Plaintiff, or caused to be commenced and/or continued criminal proceedings against the Plaintiff, without probable cause or legal justification. The Plaintiff was charged and prosecuted with shooting Morales because of the false accusations of the Defendant Officers. The Defendant Officers directly caused the Plaintiff's criminal proceedings to be commenced and/or continued. The criminal proceedings were instituted with malice, and were ultimately terminated in the Plaintiff's favor.

52. The misconduct was undertaken by Defendant, CHICAGO, by and through its agents and/or employees.

53. As a direct and proximate result of the acts of the Defendant Officers, the Plaintiff was injured, suffered emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering, and other damages.

WHEREFORE, the Plaintiff, BJ PERAY, prays for judgment in his favor and against the Defendant, CITY OF CHICAGO, awarding compensatory damages and costs against the Defendant, as well as any other relief this Court deems just and appropriate.

### COUNT IV – Illinois State Law
### Indemnification - CITY OF CHICAGO

54. The Plaintiff re-alleges Paragraphs 1 through 53, inclusive, and incorporates those Paragraphs herein, as though fully stated as this Paragraph 54.

55. At all relevant times the Defendant Officers were acting under color of law and under the course and scope of their employment.

56. At all relevant times the CITY OF CHICAGO was the employer of the Defendant Officers.

WHEREFORE, the Plaintiff, BJ PERAY, pursuant to 745 ILCS 10/9-102, demands judgment against Defendant, CITY OF CHICAGO, in the amounts awarded to the Plaintiff against the Defendants, OFFICER ACOSTA, OFFICER BOURDOSIS, and OFFICER MANDILE, and for whatever additional relief this Court deems just and appropriate.

**JURY DEMAND**

The Plaintiff demands a trial by jury on all Counts.

Respectfully Submitted by,

s/Basileios J. Foutris
BASILEIOS J. FOUTRIS
Attorney for Plaintiff
FOUTRIS LAW OFFICE, LTD.
53 W. Jackson, Suite 252
Chicago, IL 60604
312-212-1200
bfoutris@foutrislaw.com